UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DERRICK SHELTON

    Plaintiff,

    v.

MAYA ANGELOU PUBLIC CHARTER
SCHOOL,

    Defendant.

Civil Action No. 07-933 (CKK)

**MEMORANDUM OPINION**
(September 26, 2008)

Plaintiff, Derrick Shelton, an adult student, brought this action under the Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et. seq.*,[1] as well as 42 U.S.C. § 1983,

against Defendant, Maya Angelou Public Charter School ("MAPCS").  The IDEA provides that

all children with disabilities will be provided a free and appropriate public education ("FAPE"),

and provides for procedural safeguards to ensure that disabled children receive individualized

education programs ("IEP") to fulfill the Act's goals.  This case comes before the Court in

connection with an April 5, 2007 Hearing Officer Determination ("HOD") and related

proceedings.  Specifically, Plaintiff's May 21, 2007 Complaint for declaratory and injunctive

relief alleges that Defendant has failed to comply with the April 5, 2007 HOD.  Along with his

Complaint, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary

---

[1] The IDEA was reauthorized and recodified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004).  The amendments provide that the short title of the reauthorized and amended provisions remains the Individuals with Disabilities Education Act.  *See* Pub. L. No 108-446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400 (2006) ("This chapter may be cited as the 'Individuals with Disabilities Education Act'").  Accordingly, the Court refers to the amended Act herein as the IDEA.

Injunction ("TRO/PI Motion").  *See* Docket No. [2].  The Court denied Plaintiff's TRO/PI

Motion without prejudice on June 12, 2007, after the parties held discussions and reached an

agreement regarding the implementation of the April 5, 2007 HOD.  *See* 6/12/07 Order, Docket

No. [7].

      Currently pending before the Court are motions for summary judgment filed by each

party.  Plaintiff's Motion argues that MAPCS has failed to comply with the April 5, 2007 HOD,

that the April 5, 2007 HOD was correct, and that MAPCS has violated 42 U.S.C. § 1983.  In

contrast, Defendant's Motion argues only that the Hearing Officer erred in his April 5, 2007

HOD and also that this entire action is moot in light of the Court's denial of Plaintiff's TRO/PI

Motion.  Upon a searching examination of both parties' filings, the relevant statutes and case

law, and the entire record herein, the Court finds that this action is not moot, that Defendant has

failed to establish any error in the April 5, 2007 HOD, and that Defendant failed to comply with

the April 5, 2007 HOD.  The Court also finds, however, that Plaintiff has not established that

MAPCS's failure to comply with the April 5, 2007 HOD resulted in a denial of FAPE, and that

Plaintiff is not entitled to summary judgment on his claim pursuant to 42 U.S.C. § 1983.

Accordingly, the Court shall GRANT-IN-PART and DENY-IN-PART Plaintiff's [22] Motion

for Summary Judgment, and shall DENY Defendant's [23] Motion for Summary Judgment.

## I: BACKGROUND

      At the outset, the Court observes that the District Court for the District of Columbia has

supplemented Federal Rule of Civil Procedure 56 with LCvR 7(h), which requires that each party

submitting a motion for summary judgment attach a statement of material facts to which that

party contends there is no genuine issue, with specific citations to those portions of the record

upon which the party relies in fashioning the statement.  The party opposing such a motion must,

in turn, submit a statement of genuine issues enumerating all material facts which the party

contends are at issue and thus require litigation.  *See* LCvR 7(h). Where the opposing party fails

to discharge this obligation, a court may take all facts alleged by the movant as admitted.  *Id.*  As

the Court of Appeals for the District of Columbia Circuit has emphasized, "[LCvR 7(h)] places

the burden on the parties and their counsel, who are most familiar with the litigation and the

record, to crystallize for the district court the material facts and relevant portions of the record."

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir.

1996) (citing *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988); *Guarino v. Brookfield*

*Township Trustees*, 980 F.2d 399, 406 (6th Cir. 1992)).  Because of the significance of this task

and the potential hardship placed on the court if parties are derelict in their duty, courts require

strict compliance with LCvR 7(h).  *See id*. at 150 (citations omitted).

As the parties were advised before they filed their Motions for Summary Judgment, this

Court strictly adheres to the text of Local Civil Rule 7(h) when resolving motions for summary

judgment.  *See* 8/21/07 Order, Docket No. [14]; *see also Burke v. Gould*, 286 F.3d 513, 519

(D.C. Cir. 2002).  Although discretionary in the text of the Local Civil Rule 7(h), in resolving the

present summary judgment motion, this Court "assume[s] that facts identified by the moving

party in its statement of material facts are admitted, unless such a fact is controverted in the

statement of genuine issues filed in opposition to the motion."  LCvR 7(h)(1).  The United States

District Court for the District of Columbia has recently clarified that, for "cases in which judicial

review is based solely on the administrative record . . . motions for summary judgment and

oppositions thereto shall include a statement of facts with references to the administrative

record." LCvR 7(h)(2).  Local Civil Rule 7(h)(2) does not alter the parties' obligations to submit

statements of material fact in support of motions for summary judgment in administrative review

cases.  Rather, as the Comment to Local Civil Rule 7(h) states, LCvR 7(h)(2) "recognizes that in

cases where review is based on an administrative record the court is not called upon to determine

whether there is a genuine issue of material fact, but rather to test the agency action against the

administrative record." *See* Comment to LCvR 7(h).

In setting out the factual background, where possible, the Court cites to the parties'

statements of facts filed in accordance with Local Civil Rule 7(h).  The Court has reviewed the

record citations by the parties to ensure that the representations made in the parties' statement are

accurate, and notes that so-called "factual assertions" that are unsupported by citations to

accurate record evidence are insufficient to create issues of material fact.  The Court also cites

directly to the record, if appropriate, to address facts not covered by the parties in their statements

of material facts.  Moreover, the Court only uses the facts in a manner consistent with the

approach taken by the parties in their briefing and arguments made to the Court.  *See, e.g.*,

*Morgan v. Federal Home Loan Mortgage Corp.*, 328 F.3d 647, 655 n.10 (D.C. Cir. 2003).

Again, the Court emphasizes that, in accordance with the Local Civil Rule, it "assume[s] that

facts identified by the moving party in its statement of material facts are admitted, unless such a

fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR

7(h)(1).

A.      *Events Occurring Prior to the April 5, 2007 Hearing Officer Determination*

Plaintiff Derrick Shelton attended Maya Angelou Public Charter School during the 2006-

2007 school year.  Def.'s Stmt. of Mat'l Facts as to Which There is No Genuine Issue ("Def.'s

Stmt.") ¶ 1; Pl.'s Response to Def.'s Stmt. of Mat'l Facts ("Pl.'s Resp.") ¶ 1.[2]  Plaintiff's

Individualized Education Plan ("IEP") identifies him as learning disabled and calls for a total of

four (4) hours and twenty-five (25) minutes of specialized instruction and counseling per week:

ninety (90) minutes of counseling, one (1) hour of special education consultation, and one (1) hour

and fifty-five (55) minutes of advisory services.  Pl.'s Stmt. ¶ 1; Def.'s Stmt. ¶ 2; Pl.'s Resp. ¶ 1.

During the first quarter of the 2006-2007 school year, Plaintiff performed well academically and

was on the honor roll.  Def.'s Stmt. ¶ 3; Pl.'s Resp. ¶ 1, Administrative Record ("A.R.") at 3

(4/5/07 HOD).  In addition, however, prior to November 17, 2006, Plaintiff was suspended for a

total of four days: two in September 2006 for being disrespectful to a teacher and two in

connection with other incidents for one day each.  A.R. at 3 (4/5/07 HOD).

On November 17, 2006, Plaintiff was involved in an incident with another MAPCS

student (his girlfriend at the time).  Def.'s Stmt. ¶ 4; Pl.'s Resp. ¶ 2.  While Plaintiff asserts that

he acted in self-defense, see Pl.'s Resp. ¶ 2, the parties do not dispute that Plaintiff assaulted the

other student, was immediately disciplined by being removed from MAPCS, and was not allowed

to return to MAPCS as a student after November 17, 2006, see Pl.'s Stmt. ¶ 2; Def.'s Stmt. ¶¶ 4-5;

Pl.'s Resp. ¶ 2; A.R. at 3-4 (4/5/07 HOD).  On November 22, 2006, MAPCS sent a letter to

Plaintiff's father, informing him that Plaintiff had been suspended with the intent to expel.  Def.'s

---

[2] As required by LCvR 7(h), Plaintiff proffered a Statement of Material Facts in support of his Motion for Summary Judgment.  See Docket No. [22-2] ("Pl.'s Stmt.").  In filing its own Motion for Summary Judgment, Defendant did not, as required, file a statement in response to Plaintiff's Statement, but only submitted its own Statement of Material Facts.  See Def.'s Stmt. Plaintiff, in turn, filed a Response to Defendant's Statement of Material Facts.  Accordingly, where facts are covered by Defendant's Statement and Plaintiff's Response, the Court references them herein.  Where, however, Plaintiff's factual assertions are not covered in Defendant's Statement–but are supported by record evidence–the Court accepts them as uncontroverted, in accordance with Local Civil Rule 7(h).

Stmt. ¶ 6; Pl.'s Resp. ¶ 3; A.R. at 212.  The letter indicated that MAPCS's special education coordinator would be scheduling a manifestation determination review ("MDR") meeting as soon as possible.  A.R. at 4 (4/5/07 HOD); A.R. at 212.

Pursuant to the IDEA, an MDR meeting "shall" be held "within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct."  20 U.S.C. § 1415(k)(1)(E).  It is undisputed that the MDR in Plaintiff's case was not held until December 19, 2006.  Def.'s Stmt. ¶ 11; Pl.'s Resp. ¶ 4; A.R. at 4-5 (4/5/07 HOD).  Before the Hearing Officer below, Plaintiff argued that MAPCS denied him FAPE when it failed to convene an MDR meeting within 10 school days of his suspension, *see* A.R. at 9 (4/5/07 HOD); however, the Hearing Officer concluded that MAPCS's delay in convening the MDR meeting was justified and did not constitute a denial of FAPE.  *Id.* at 9-10.  In reaching this conclusion, the Hearing Officer credited testimony that Plaintiff's "father wanted to delay the meeting."  *Id.*  The Hearing Officer also noted that "once the student retained counsel the MDR was convened on a date proposed by his counsel," and acknowledged that MAPCS offered to provide Plaintiff with tutoring once he had been out of school for ten days.  *Id.*  As neither party has contested the Hearing Officer's findings in this respect, the Court does not revisit herein either the Hearing Officer's ultimate conclusion or its factual underpinnings.

### 1.    *The MDR Meeting and Resolution Meeting*

As noted above, MAPCS convened the MDR in this case on December 19, 2006.  Def.'s Stmt. ¶ 11; Pl.'s Resp. ¶ 4.  Plaintiff, his parents, and his educational advocate attended the meeting, along with a counselor, Plaintiff's algebra teacher, a psychologist, and the Special Education Coordinator from MAPCS (collectively the "MDR Team").  *Id.*; A.R. at 4-5 (4/5/07

HOD).  The MDR Team determined that Plaintiff's behavior on November 17, 2006 was not a manifestation of his disability, concluding that although Plaintiff had previously been suspended, the November 17, 2006 incident was an aberration.  Def.'s Stmt. ¶ 11; Pl.'s Resp. ¶ 4; A.R. at 5 (4/5/07 HOD).  During the MDR meeting, Plaintiff's educational advocate expressed a desire to reconvene the MDR Team at a later date to review Plaintiff's IEP.  *Id.*  The MDR Team did not discuss a placement for Plaintiff or consider the services that Plaintiff would be provided during the period that he was not attending MAPCS.  A.R. at 5 (4/5/07 HOD).  The MDR Team also did not discuss whether a Functional Behavioral Assessment ("FBA") or Behavioral Intervention Plan ("BIP") should be conducted.  Pl.'s Resp. ¶ 6; A.R. at 74-78 (notes of MDR meeting).  The decision to expel Plaintiff from MAPCS was not made at the MDR meeting.  A.R. at 5 (4/5/07 HOD); A.R. at 74-78 (notes of MDR meeting).

Immediately after the MDR meeting on December 19, 2006, MAPCS convened a resolution meeting regarding a due process complaint filed by Plaintiff's counsel against MAPCS.  Def.'s Stmt. ¶ 20; Pl.'s Stmt. ¶ 7; A.R. at 3, 5 (4/5/07 HOD).  Plaintiff's counsel attended the resolution meeting.  Def.'s Stmt. ¶ 21; A.R. at 6 (4/5/07 HOD).  At the resolution meeting, MAPCS offered to provide Plaintiff with three hours of tutoring per week until District of Columbia Public Schools ("DCPS") determined a new placement for Plaintiff.  Def.'s Stmt. ¶ 22; A.R. at 6 (4/5/07 HOD).  Significantly, however, the Hearing Officer found that there was no agreement as to the amount of tutoring during the resolution meeting, because "Counsel indicated she wanted the student readmitted," "MAPCS did not agree to readmit the student and the meeting ended."  A.R. at 6 (4/5/07 HOD).  In its Statement, Defendant alleges that "MAPCS's IEP team determined that 3 hours of individualized one-on-one tutoring per week was appropriate

since [Plaintiff's] IEP called for a total of 4.5 hours of specialized instruction and counseling in a classroom setting." Def.'s Stmt. ¶ 23. The pages of the Administrative Record that Defendant cites in support of this assertion are entirely unrelated to the assertion. *See* A.R. at 110-13. Moreover, Defendant's use of the phrase "IEP team" to describe a group of MAPCS personnel is disingenuous because the IDEA explicitly defines the term "IEP Team" as

> a group of individuals composed of-- (i) the parents of a child with a disability;
> (ii) not less than 1 regular education teacher of such child . . . ; (iii) not less than 1
> special education teacher . . . of such child; (iv) a representative of the local
> educational agency . . . ; (v) an individual who can interpret the instructional
> implications of evaluation results . . . ; (vi) at the discretion of the parent or the
> agency, other individuals who have knowledge or special expertise regarding the
> child . . . ; and (vii) whenever appropriate, the child with a disability.

20 U.S.C. § 1414(d)(1)(C). To be clear, Defendants do not assert that all of these individuals collectively determined that 3 hours of tutoring per week was appropriate. Def.'s Stmt. ¶ 23.

### 2. *Events Leading to the March 12, 2007 Due Process Hearing*

Following the MDR meeting and resolution meeting, MAPCS issued a letter to Plaintiff indicating that he had been expelled as of December 19, 2006. A.R. at 5 (4/5/07 HOD). The letter indicated that MACPS would provide Plaintiff with tutoring for the time that he was out of school following the tenth day of his suspension, and directed Plaintiff to register at his neighborhood school as soon as possible. *Id.*; A.R. at 79. The letter informed Plaintiff that his transcript and other records would be sent to his neighborhood school, but did not indicate how Plaintiff could appeal his suspension or expulsion. *Id.* The Hearing Officer found that, despite MAPCS' letter, Plaintiff and his parents were under the impression that Plaintiff was still enrolled at MAPCS until the due process hearing was complete, and therefore did not take any action to register Plaintiff at his neighborhood school or any other school. A.R. at 5 (4/5/07

HOD).

Also following the MDR meeting and resolution meeting, MAPCS contacted the school's

DCPS liaison and informed her of Plaintiff's expulsion.  Def.'s Stmt. ¶ 24; A.R. at 6 (4/5/07

HOD).  The DCPS liaison told MAPCS that Plaintiff's neighborhood school could implement his

IEP.  *Id.*  MAPCS's Special Education Coordinator then went to Plaintiff's neighborhood school

and provided the special education coordinator at that school with Plaintiff's student records.  *Id.*;

*see also* A.R. at 85.

Plaintiff's counsel filed an amended due process complaint on January 12, 2007.  A.R. at

6 (4/5/07 HOD).  In January 2007, Plaintiff's educational advocate sent a letter to MAPCS

proposing dates to reconvene the MDR Team to discuss Plaintiff's IEP.  *Id.*; *see also* A.R. at

184.[3]  Nevertheless, the MDR Team did not reconvene prior to the March 12, 2007 due process

hearing.  *See* Tr. of 3/12/07 Due Process Hrg. ("Hrg. Tr.") at 30:23-31:1 (testimony of C.

Hamilton, educational advocate).[4]  In addition, following the filing of Plaintiff's amended due

process complaint, MAPCS's Special Education Coordinator made three attempts to contact

---

[3] As noted above, during the MDR meeting, Plaintiff's education advocate expressed a
desire to reconvene the MDR Team at a later date to review Plaintiff's IEP.  A.R. at 5 (4/5/07
HOD).  Plaintiff's education advocate followed up on the MDR meeting with a letter to MAPCS
stating that Plaintiff's "parent strongly feels the IEP does not correctly identify [Plaintiff's]
disability," and that "[i]f [Plaintiff's] IEP correctly reflected his disability- parent feels the
incident would have been a manifestation."  A.R. at 174.  Nevertheless, in the same letter, the
educational advocate stated that Plaintiff's "parent acknowledges that based on the current IEP
the incident would not appear to be a manifestation."  *Id.*  As such, Plaintiff's parent and/or
educational advocate's desire to review Plaintiff's IEP has no bearing on the MDR Team's
determination that the November 17, 2006 was not a manifestation of Plaintiff's disability.

[4] Although Defendant filed a copy of the transcript of the March 12, 2007 due process
hearing along with the Administrative Record in this case, the transcript is not ascribed
Administrative Record page numbers.  Accordingly, in referencing the hearing testimony, the
Court cites directly to the pagination noted on the hearing transcript.

Plaintiff's counsel to convene a resolution meeting.  A.R. at 6 (4/5/07 HOD).  A second

resolution meeting was eventually convened, but Plaintiff's complaint was not resolved.  *Id.* at 7.

3.       *March 12, 2007 Due Process Hearing and April 5, 2007 HOD*

The due process hearing in this case was held on March 12, 2007, and Plaintiff was

represented by counsel.  Def.'s Stmt. ¶ 26; Pl.'s Resp. ¶ 9.  During the hearing, Plaintiff, each of

his parents, Plaintiff's educational advocate, MAPCS's Special Education Coordinator, and an

MAPCS psychologist all testified.  *See generally* Hrg. Tr.  As was made clear during the hearing

testimony, and as the Hearing Officer found in his April 5, 2007 HOD, the parties disagree as to

the tutoring that MAPCS provided Plaintiff between his November 17, 2006 suspension and the

March 12, 2007 due process hearing.  It is clear from the Administrative Record that factual

disputes exist still in this regard as to "when the tutoring [offered by MAPCS began], the

quantity of tutoring delivered, the subjects covered in the tutoring and the student's availability

for tutoring."  A.R. at 6 n.5 (4/5/07 HOD).  Although the Court cannot resolve this issue on the

current record, the dispute is not material to the April 5, 2007 HOD, the Court's review of that

HOD, or the Court's resolution of the parties' Motions for Summary Judgment.

The Hearing Officer issued his Determination on April 5, 2007.  *See* A.R. at 2-17 (4/5/07

HOD).  As noted above, the Hearing Officer found that MAPCS did not deny Plaintiff FAPE by

failing to convene the MDR within 10 days following Plaintiff's November 17, 2006 suspension.

*See id.* at 9-10.  In contrast, the Hearing Officer found that Plaintiff's counsel sustained

Plaintiff's burden of proof in showing that MAPCS denied Plaintiff FAPE when it (1) failed to

conduct an FBA and BIP following the MDR meeting, and (2) failed to provide Plaintiff with an

alternative placement and/or to provide Plaintiff with continued services following his

suspension/expulsion. *Id.* at 10-13.  As a remedy, the HOD ordered:

1.  MAPCS shall within ten (10) school days of the issuance of this Order, convene a multi-disciplinary team/individualized educational program (MDT/IEP) meeting to develop a FBA [Functional Behavioral Assessment] and BIP [Behavioral Implementation Plan] for the student, discuss if any additional evaluations are warranted, review and/or revise the student's IEP as appropriate, discuss and determine the student's placement, and discuss compensatory education and develop a compensatory education plan for the time student has not been provided an alternative interim placement decided by the IEP team.

2.  MAPCS shall ensure that a representative of DCPS [District of Columbia Public Schools] participates in the MDT/IEP meeting.

3.  MAPCS shall either allow the student to reenroll at MAPCS or DCPS shall issue a prior notice of placement within five (5) school days of the MDT/IEP meeting if the recommended placement is public and thirty (30) calendar days if the recommended placement is private.

4.  Scheduling of the MDT/IEP meeting is to be arranged through parent's counsel.

5.  MAPCS and DCPS will be given a day for day extension of any of the prescribed time frames in this Order for any delay caused by the student, the parent and/or their representative(s).

6.  If there is not agreement by the parties as to the compensatory education plan for the student pursuant to this Order either party may petition this Hearing Officer for an expedited hearing on this issue.

A.R. at 13 (4/5/07 HOD).

**B.**   *Events Following the April 5, 2007 Hearing Officer Determination*

Following the April 5, 2007 HOD, Plaintiff's educational advocate attempted to schedule

the MDT required by the HOD.  Pl.'s MSJ, Ex. 1 (4/11/07 Letter from educational advocate to

MAPCS Special Education Coordinator).  MAPCS, however, responded that it was "appealing

the HOD issued on April 5, 2007, and thus [would] not be convening the MDT meeting outlined

in the HOD."  Pl.'s Stmt. ¶¶ 5-6; Pl.'s MSJ, Ex. 3 (4/13/07 Letter from MAPCS counsel to Pl.'s

counsel); *see also* Pl.'s MSJ, Ex. 2 (4/12/07 Letter from Pl.'s counsel to MAPCS counsel).

As noted above, on May 21, 2007, Plaintiff filed his Complaint and TRO/PI Motion with this Court. Plaintiff's Complaint alleges violations of the IDEA and 42 U.S.C. § 1983, and seeks "an injunction prohibiting Defendants from refusing [Plaintiff] admission to MAPCS; a declaratory judgment declaring that the Defendant is in violation of the April 5, 2007, Hearing Officer's Determination," and reasonable attorneys fees and costs. Compl. at 6. In addition to attorney's fees and costs, Plaintiff's TRO/PI Motion seeks:

> (1) a determination that MAPCS denied [Plaintiff] FAPE, (2) an order that MAPCS immediately, reconvene [Plaintiff's] MDT/IEP Meeting, develop an FBA and BIP and comply with the remainder of the April 5, 2007 Hearing Officer's Determination, (3) an award of compensatory education for denial of special education and its related service from December 2006.

Pl.'s TRO/PI Mot. at 10.

The Court held a telephone conference call on the record with counsel for both parties on May 22, 2007. During that conference call, the parties agreed to conduct an MDT meeting with DCPS's involvement. *See* 6/12/07 Order, Docket No. [7]. In particular, MAPCS agreed to participate in the MDT in order to update Plaintiff's IEP to facilitate an interim placement, which DCPS would then effectuate pending a resolution of Defendant's appeal of the April 5, 2007 HOD. *Id.* at 2-3. The Court instructed Plaintiff's counsel to forward to a copy of a meeting confirmation notice and list of items to be discussed at the meeting to defense counsel. *Id.* at 3; Pl.'s Stmt. ¶ 8. The Court further instructed the parties to advise the Court, no later than June 4, 2007, whether the TRO/PI had been resolved. 6/12/07 Order, Docket No. [7], at 3.

On June 4, 2007, both Plaintiff and Defendant filed separate status reports with the Court. *Id.* Each report indicated that an MDT meeting was held on May 31, 2007, attended by Plaintiff,

Plaintiff's father, Plaintiff's counsel, Plaintiff's advocate, representatives from DCPS, and

teachers and representatives from MAPCS, and that during the meeting, DCPS agreed to

complete Plaintiff's FBA and IEP, and MAPCS agreed to participate.  *Id.*  MAPCS further

agreed to increase Plaintiff's tutoring to five hours a week with an extension of tutorial services

until August 3, 2007, to allow Plaintiff until August 3, 2007 to turn in class assignments from

January 2006 to August 2007, and to update Plaintiff's records on August 3, 2007 accordingly.

*Id.*  Upon reviewing Plaintiff's counsel's representations to the Court during the May 22, 2007

conference call regarding the nature of relief sought in Plaintiff's TRO/PI Motion, the Court

concluded that MAPCS' actions since that date were sufficient to warrant the denial without

prejudice of Plaintiff's TRO/PI Motion.  *Id.* at 3-5.  The Court noted, however, that its denial

without prejudice was "based on Defendant fulfilling its representations to the Court (and

accordingly to Plaintiff) as set forth in its Status Report."  *Id.* at 4-5.

Plaintiff and Defendant have each filed a Motion for Summary Judgment in this case,

Plaintiff has filed an Opposition to Defendant's Motion for Summary Judgment (which is also a

Reply in support of his own Motion), and Defendant has filed a Reply.  Accordingly, the parties'

cross-motions for summary judgment are now ripe for the Court's review and resolution.

## II: STATUTORY FRAMEWORK

The purpose of the IDEA is "to ensure that all children with disabilities have available to

them a free appropriate public education that emphasizes special education and related services

designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A).  "Implicit" in the IDEA's

guarantee "is the requirement that the education to which access is provided be sufficient to

confer some educational benefit upon the handicapped child."  *Bd. of Educ. of Hendrick Hudson*

*Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 200 (1982).

As a condition of funding under the IDEA, the Act requires schools and other local educational agencies to adopt procedures to ensure appropriate educational placement of disabled students. *See* 20 U.S.C. § 1413. Schools and school districts must also develop comprehensive plans for meeting the special educational needs of individual disabled students. *See id.* § 1414(d)(2)(A). Of particular relevance to the instant case, the IDEA sets forth particular processes by which a school may remove and/or discipline a child with a disability who violates a code of student conduct. *See id.* §§ 1415(j)-(k). As one option, the Act provides:

> If school personnel seek to order a change in placement that would exceed 10 school days and the behavior that gave rise to a violation of the school code is determined not to be a manifestation of the child's disability . . . the relevant disciplinary procedures applicable to children without disabilities may be applied to the child in the same manner and for the same duration in which the procedures would be applied to children without disabilities . . . although it may be provided in an interim alternative setting.

*Id.* § 1415(k)(1)(C). As another option, "[s]chool personnel may remove a student to an interim alternative educational setting for not more than 45 school days without regard to whether the behavior is determined to be a manifestation of the child's disability, in cases where a child . . . (iii) has inflicted serious bodily injury upon another person while at school . . . ." *Id.* § 1415(k)(1)(G). In either situation, however, a child with a disability who is removed from his or her current placement

> shall-- (i) continue to receive educational services    . . . so as to enable the child to continue to participate in the general education curriculum, although in another setting, and to progress toward meeting the goals set out in the child's IEP; and (ii) receive, *as appropriate*, a functional behavioral assessment, behavioral intervention services and modifications, that are designed to address the behavior violation so that it does not recur.

*Id.* § 1415(k)(1)(D).

The IDEA's implementing regulations further clarify that, "for purposes of [disciplinary] removals of a child with a disability from the child's current educational placement" a "change in placement occurs if [*inter alia*] [t]he removal is for more than 10 consecutive school days . . . ." 34 C.F.R. § 300.536(a).  The regulations also clarify that "[a]fter a child with a disability has been removed from his or her current placement for 10 days in the same school year, during any subsequent days of removal the public agency must provide services to the extent required under paragraph (d) of [34 C.F.R. § 300.530]." *Id.* § 300.530(b)(2).  Similarly, where a disciplinary change in placement would exceed 10 consecutive school days and the conduct that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability, the school "may apply the relevant disciplinary procedures to children with disabilities in the same manner and for the same duration as the procedures would be applied to children without disabilities, *except as provided in paragraph (d)* of [§ 300.530]." *Id.* § 300.530 (c).  In turn, paragraph (d) reiterates the services that a child is entitled to receive under 20 U.S.C. § 1415(k)(1)(D), set forth above.  *Id.* § 300.530(d)(1).  Finally, the regulations mirror the IDEA in providing that school personnel may remove a student to an interim alternative educational setting for not more than 45 school days when a student inflicts serious bodily harm upon another person while at school, regardless of whether the behavior is a manifestation of the child's disability.  *Id.* § 300.530(g).

The IDEA specifically requires that "[t]he interim alternative educational setting in subparagraphs (C) and (G) of [§ 1415(k)(1)] shall be determined by the IEP Team."  20 U.S.C. § 1415(k)(2).  Similarly, the implementing regulations require that, "[i]f the removal is a change of placement under § 300.536, the child's IEP Team determines appropriate services under

15

paragraph (d)(1) of [§ 300.530]." 34 C.F.R. § 300.530(d0(5).  As noted above, the IDEA defines

the term "IEP Team" to include the disabled student's parents, teachers, other educational

specialists, and where appropriate, the student.  *See* 20 U.S.C. § 1414(d)(1)(C).  Of further

relevance, the IDEA provides that conduct in violation of a code of student conduct is considered

to be manifestation of a child's disability where "the local educational agency, the parent, and

relevant members of the IEP Team" (as determined by the parent and local educational agency)

determine that the conduct (i) "was caused by, or had a direct and substantial relationship to, the

child's disability," or (ii) "was the direct result of the local educational agency's failure to

implement the IEP."  *Id.* § 1415(k)(1)(E).

      The IDEA also sets forth a process whereby a parent of a child with a disability who

disagrees with any decision regarding placement or a manifestation determination may request a

hearing, *see id.* § 1415(k)(3), and provides that while such an appeal is pending "the child shall

remain in the interim alternative educational setting pending the decision of the hearing officer or

until the expiration of the time provided for in paragraph 1(C) [of § 1415(k)], whichever occurs

first, unless the parent and the State or local educational agency agree otherwise," *id.* §

1415(k)(4).  The Act more generally provides that, whenever a complaint is received under §

1415(k), parents involved in the complaint are entitled to an impartial due process hearing, *see*

20 U.S.C. § (f)(1), at which they have a "right to be accompanied and advised by counsel," *id.* §

1415(h)(1).  A qualified impartial Hearing Officer conducts the due process hearing in

accordance with the Act.  *Id.* § 1415(f)(3).  Parents "aggrieved by" a Hearing Officer's findings

and decision may bring a civil action in either state or federal court.  20 U.S.C. § 1415(i)(2)(A).

In that situation, the district court has jurisdiction to receive the record of the administrative

proceeding, to hear additional evidence at the request of a party, and "basing its decision on the preponderance of the evidence, [to] grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Again, the IDEA provides that "[e]xcept as provided in subsection (k)(4) of [§ 1415], during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then- current educational placement of the child . . . ." *Id.* § 1415(j). This provision is referred to as the "stay put" provision of the IDEA. *See Friendship Edison Public Charter School Chamberlain Campus v. Suggs*, 562 F. Supp 2d 141, 143 (D.D.C. 2008) (adopting Report and Recommendation of Magistrate Judge).

### III: LEGAL STANDARDS

A.      *Summary Judgment*

In this case the Court is presented with cross motions for summary judgment. A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the opposing party must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.*

at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

B.      *The IDEA*

In a district court's review of a Hearing Officer Determination, the burden of proof is

always on the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the Hearing Officer was wrong." *Reid v. Dist. of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)). In turn, "a court upsetting the officer's decision must at least explain its basis for doing so." *Id.*

The Supreme Court has interpreted the "preponderance standard of review [applicable to district court review of a Hearing Officer Determination] not to be an allowance of unfettered *de novo* review." *Id.* (quoting *Rowley*, 458 U.S. at 206). Courts must give administrative proceedings "due weight," *id.*, and "[f]actual findings from the administrative proceedings are to be considered prima facie correct." *Id.* (quoting *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003)). Courts may not substitute their own views for those of the Hearing Officer. *See Rowley*, 458 U.S. at 206; *Shaw v. Dist. of Columbia*, 238 F. Supp. 2d 127, 135 (D.D.C. 2002). However, the statute also suggests "less deference than is conventional in administrative proceedings," *Reid*, 401 F.3d at 521, since the district court is allowed to hear additional evidence at the request of the party. 20 U.S.C. § 1415(i)(2)(C)(ii). When no additional evidence is introduced in a civil suit seeking review of an HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record. 20 U.S.C. § 1415(i)(2)(B); *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 67 (D.D.C. 2005).

**IV: DISCUSSION**

Plaintiff's Motion for Summary Judgment makes two principal arguments: (1) that MAPCS denied Plaintiff FAPE when it failed to comply with the April 5, 2007 HOD, and (2) that MAPCS violated 42 U.S.C. § 1983 by refusing to comply with the April 5, 2007 HOD.

19

Defendant's Motion for Summary Judgment does not respond to either of those arguments directly, but rather asserts (1) that Plaintiff's Complaint is moot in light of the Court's denial of Plaintiff's TRO/PI Motion, and (2) that the Hearing Officer erred in his findings.  The Court addresses the arguments raised in Defendant's Motion for Summary Judgment before turning to Plaintiff's arguments in favor of his Motion for Summary Judgment.

> A.   *Defendant's Motion for Summary Judgment Shall Be Denied*

> 1.   *The Instant Action is Not Moot*

Defendant's Motion for Summary Judgment begins by arguing that Plaintiff's Complaint essentially requests the same relief as he requested in his TRO/PI Motion and that, as a result, Plaintiff's Complaint is moot in light of the Court's denial of Plaintiff's TRO/PI Motion. *See* Def.'s MSJ at 6-7.  Defendant's argument overlooks several key points that demonstrate that this action is not moot.  First, the Court denied Plaintiff's TRO/PI Motion *without prejudice* in light of the parties' agreement that DCPS would (with MAPCS's participation) conduct the FBA and BIP called for in the April 5, 2007 HOD, and that MAPCS would provide Plaintiff with additional tutoring and additional time to complete assignments for the 2006-2007 school year. *See* 6/12/07 Order, Docket No. [7].  In denying Plaintiff's TRO/PI Motion without prejudice, the Court concluded that the parties' agreement addressed the issues that Plaintiff's counsel identified as underlying his Motion.  The Court did not, however, reach the separate issue of whether MAPCS violated the April 5, 2007 HOD by refusing to implement it.

"Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. United States Navy*, 525 F.3d 1, 3-4 (D.C. Cir. 2008) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 621 (1979)).  In other

words, "[a] case is moot if the judgment, regardless of the way it goes, 'will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Noble v. Sombrotto*, 525 F.3d 1230, 1241 (D.C. Cir. 2008) (quoting *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 621 (D.C. Cir. 2002)).  Here, the April 5, 2007 HOD found that Plaintiff was entitled to compensatory education for the time that he was not provided with an interim alternative educational placement decided by his IEP Team.  *See* A.R. at 13 (4/5/07 HOD).  Plaintiff re-raised the issue of compensatory education in his TRO/PI Motion, and the parties agreed that, in resolving that Motion, Plaintiff would forward a proposed compensatory education plan to Defendant by June 15, 2007.  *See* 6/12/07 Order, Docket No. [7], at 5.  The record and the parties' briefs are silent as to whether any compensatory education plan has been implemented since Plaintiff's TRO/PI was denied, and the Court therefore cannot determine whether the issue remains extant.

Further, Plaintiff's Complaint seeks, *inter alia*, a declaratory judgment that MAPCS violated the April 5, 2007 HOD, *see* Compl. at 6, and the Court has never resolved that issue.  If Plaintiff is entitled to a declaratory judgment to that effect, and can also demonstrate that MAPCS's violation of the HOD resulted in a denial of FAPE and educational benefits, Plaintiff may be able to pursue compensatory education based on MAPCS's violation of the HOD.  As such, Plaintiff's case is similar to *Lesesne v. District of Columbia*, in which the D.C. Circuit concluded that an IDEA case was not moot, despite the parties' agreement to a new educational placement for the plaintiff, because the plaintiff's complaint contained a demand for compensatory education that was not addressed in the parties' agreement.  *See* 447 F.3d 828, 833 (D.C. Cir. 2006).  At this point, the Court does not reach any conclusions as to whether Plaintiff

is entitled to compensatory education, but nevertheless concludes that the instant action is not

moot because Plaintiff retains a "legally cognizable interest in the outcome," *Larsen*, 525 F.3d at

3, and the outcome has "a more-than-speculative chance of affecting [the parties] in the future,"

*Noble*, 525 F.3d at 1241.

### 2. Defendant Has Not Established Error in the April 5, 2007 HOD

As noted above, the April 5, 2007 HOD in this case included three conclusions: (1) that

MAPCS did not deny Plaintiff FAPE when it delayed the MDR meeting at Plaintiff's father's

request; (2) that MAPCS denied Plaintiff FAPE by failing to conduct an FBA and implement a

BIP following Plaintiff's suspension; and (3) that MAPCS denied Plaintiff FAPE by failing to

provide him an alternative educational placement and/or failing to provide him continuing

services following his suspension and expulsion.  *See* A.R. at 2-14 (4/5/07 HOD).  Neither party

has challenged the HOD's first conclusion, and the Court therefore does not revisit it.

Defendant's Motion for Summary Judgment, however, argues that the Hearing Officer erred as to

each of the other two conclusions, *see* Def.'s MSJ at 7-8, and the Court considers each in turn.

### a. The Hearing Officer Did Not Err As to the FBA/BIP

In his April 5, 2007 HOD, the Hearing Officer noted that the record contained no

evidence that the MDR Team erred in finding that the conduct that gave rise to Plaintiff's

suspension was not a manifestation of his disability, and therefore "conclude[d] that the student's

behavior for which was suspended on November 17, 200[6] was not a manifestation of his

disability." A.R. at 10 (4/5/07 HOD).  In its Motion for Summary Judgment, Defendant argues

that, in light of this conclusion, the Hearing Officer erred in finding that MAPCS should have

conducted an FBA and BIP following Plaintiff's suspension.  Def.'s Mot. at 7-8.  Defendant does

22

not provide support for its claim, and certainly does not establish that the Hearing Officer erred in this respect.

As noted above, the IDEA and its implementing regulations provide two options for schools to remove a child for more than 10 school days for violating a school code of conduct. First, a school may order a change in placement that exceeds 10 school days and, if the behavior that gives rise to the code violation is determined not to be a manifestation of the child's disability, may discipline the child in the same manner as it would discipline a child without disabilities.  20 U.S.C. § 1415(k)(1)(C).  Alternatively, "[s]chool personnel may remove a student to an interim alternative educational setting for not more than 45 school days without regard to whether the behavior is determined to be a manifestation of the child's disability, in cases where a child . . . (iii) has inflicted serious bodily injury upon another person while at school . . . ."  *Id.* § 1415(k)(1)(G).  In seeking to expel Plaintiff, MAPCS obviously sought to remove him from MAPCS for more than 45 days.  Accordingly, although MAPCS states that it "was not seeking to change the student's placement, it instead sought to and did dismiss" him for his conduct on November 17, 2006, Def.'s MSJ at 2, it appears that MAPCS–regardless of how it describes its intent–ordered a change of placement to exceed 10 school days.  This conclusion is bolstered by the fact that the IDEA's implementing regulations clarify that, "for purposes of [disciplinary] removals of a child with a disability from the child's current educational placement" a "change in placement occurs if [*inter alia*] [t]he removal is for more than 10 consecutive school days . . . ."  34 C.F.R. § 300.536(a).  As such, once Plaintiff was out of school for more than 10 consecutive school days following his November 17, 2006 suspension, a change in placement had occurred.

MAPCS also argues that, because Plaintiff's conduct was determined not to be a manifestation of his disability, MAPCS "could either expel the student, requiring no further services or place the student in an alternative setting - requiring some level of services.  The defendant properly elected expulsion, requiring no further services."  Def.'s MSJ at 2.  Defendant's argument is neither clear nor correct.  There is no dispute that once the MDR Team determined that Plaintiff's conduct was not a manifestation of his disability MAPCS could discipline Plaintiff in the same manner as it disciplined students without disabilities.  *See* 20 U.S.C. § 1415(k)(1)(C).  Nevertheless, the IDEA explicitly provides that a child with a disability who is removed from his or her current placement under § 1415(k)(1)(C)

> shall-- (i) continue to receive educational services   . . . so as to enable the child to continue to participate in the general education curriculum, although in another setting, and to progress toward meeting the goals set out in the child's IEP; and (ii) receive, *as appropriate*, a functional behavioral assessment, behavioral intervention services and modifications, that are designed to address the behavior violation so that it does not recur.

*Id.* § 1415(k)(1)(D).  The IDEA regulations further clarify that "[a]fter a child with a disability has been removed from his or her current placement for 10 days in the same school year, during any subsequent days of removal the public agency must provide services to the extent required under paragraph (d) of [34 C.F.R. § 300.530]."  34 C.F.R. § 300.530(b)(2).  Similarly, where a disciplinary change in placement would exceed 10 consecutive school days and the conduct that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability, the school "may apply the relevant disciplinary procedures to children with disabilities in the same manner and for the same duration as the procedures would be applied to children without disabilities, *except as provided in paragraph (d)* of [§ 300.530]."  *Id.* § 300.530 (c).  In turn, paragraph (d) reiterates the services that a child is entitled to receive under 20 U.S.C. §

1415(k)(1)(D), set forth above.  *Id.* § 300.530(d)(1).

Accordingly, despite the fact that MAPCS was entitled to discipline Plaintiff in the same manner that disciplined students without disabilities, pursuant to the IDEA and its regulations, Plaintiff was entitled to receive "as appropriate, a functional behavioral assessment, behavioral intervention services and modifications, that are designed to address the behavior so that it does not recur." 20 U.S.C. § 1415(k)(1)(D). Defendant does not proffer any legal support for its claim that it was not required to provide Plaintiff with an FBA and/or BIP because it validly elected to expel him, and the Court is not aware of any.  Moreover, although MAPCS ignores this fact in its summary judgment briefing, Plaintiff was suspended from MAPCS between the November 17, 2006 incident and the December 19, 2006 MDR meeting, i.e., for more than 10 school days. Thus, by the time that MAPCS officially expelled Plaintiff on December 19, 2006, a change in placement had occurred, under 34 C.F.R. § 300.536(a), and MAPCS was required to provide Plaintiff with an FBA and BIP, as appropriate, under 34 C.F.R. §§ 300.530(b)(2) and (d).

As the Hearing Officer correctly found, "[t]here is no dispute that a FBA and BIP were not developed and[/]or implemented" prior to the April 5, 2007 HOD.  A.R. at 10 (4/5/07 HOD). The Hearing Officer further found that, although the IDEA required MAPCS to conduct an FBA and BIP "as appropriate," the MAPCS personnel's testimony at the Hearing "was not sufficient evidence that a FBA and/or BIP, designed to address the student's behavior violation so that it did not recur, was inappropriate or unwarranted." *Id.*  To the contrary, the Hearing Officer noted that Plaintiff was suspended because of his behavior three times during the fall of 2006 before the November 17, 2006 suspension. *Id.*  The Hearing Officer concluded that "[t]he number of suspensions and the student's behavior seemed to have warranted some intervention to ensure the

student would not continue to engage in behavior disruptive to his education," and that, as a result, "MAPCS should have conducted a FBA and BIP following the MDR meeting." *Id.*

Defendant does not offer any record evidence or legal authority to challenge the Hearing Officer's finding that an FBA and BIP would have been appropriate following the MDR meeting. Instead, Defendant states only that "[t]he MDR determined that an FBA/BIP was **not** appropriate for Plaintiff." Def.'s MSJ at 8 (emphasis in original). This statement is not supported by a citation to the record and is frankly disingenuous. The MDR Team determined that Plaintiff's behavior was not a manifestation of his disability, but–as noted above–did not discuss whether an FBA and/or BIP should be conducted. Pl.'s Resp. ¶ 6; A.R. at 74-78 (notes of MDR meeting). That MAPCS's participants in the MDR Team may have believed an FBA and BIP did not have to be conducted does not mean that the entire MDR Team agreed. MAPCS's *ipse dixit* that an FBA and BIP were not appropriate because Plaintiff's behavior was determined not to be a manifestation of his disability is thus insufficient, and certainly does not persuade the Court that the Hearing Officer was wrong in concluding that MAPCS denied Plaintiff FAPE by failing to conduct an FBA and BIP following Plaintiff's suspension and expulsion.

> b.    *The Hearing Officer Did Not Err as to Continuing Services*

In the April 5, 2007 HOD, the Hearing Officer noted that once Plaintiff had been removed from school for a total of ten school days in the 2006-2007 school year, any further removal constituted a change of placement under 34 C.F.R. § 300.536(a), and obligated MAPCS to provide Plaintiff with continuing services under 34 C.F.R. §§ 300.530(b)(2) and (d). A.R. at 11-12 (4/5/07 HOD). Defendant argues that the Hearing Officer erred in reaching this conclusion because MAPCS properly expelled Plaintiff after the MDR Team determined that his

behavior was not a manifestation of his disability.  *See* Def.'s MSJ at 8; Def.'s Reply at 2.  As

discussed above, however, a change in placement occurred on the tenth consecutive school day

that Plaintiff missed due to his suspension, i.e., by early December 2006, and well in advance of

MAPCS's December 19, 2006 decision to expel Plaintiff.  *See* 34 C.F.R. § 300.536(a).  At that

time, MAPCS had an obligation to provide Plaintiff with continuing services under 34 C.F.R. §§

300.530(b)(2) and (d).  MAPCS does not offer legal authority for its position that its obligation to

provide such continuing services was alleviated by its subsequent decision to expel Plaintiff, and

fails to account for the fact that, by the time MAPCS expelled Plaintiff, a change in placement

had already occurred because Plaintiff had been out of MAPCS for more than ten school days.

Under 20 U.S.C. § 1415(k)(1)(D) and 34 C.F.R. §§ 300.530(c) and (d), a child with a

disability who is removed from his or her current placement based on a disciplinary violation

(regardless of whether the conduct is found to be a manifestation of the child's disability), must

"continue to receive educational services . . . so as to enable the child to continue to participate in

the general educational curriculum, although in another setting, and to progress toward meeting

the goals set out in the child's IEP."  20 U.S.C. § 1415(k)(1)(D);  34 C.F.R. §§ 300.530(c) and

(d).  Further, the IDEA provides that "[t]he interim alternative educational setting in

subparagraphs (C) and (G) of [§ 1415(k)(1)] shall be determined by the IEP Team," 20 U.S.C. §

1415(k)(2), and the implementing regulations provide that, "[i]f the removal is a change of

placement under § 300.536, the child's IEP Team determines appropriate services under

paragraph (d)(1) of [§ 300.530]," 34 C.F.R. § 300.530(d)(5).  Again, the IDEA defines the term

"IEP Team" to include the disabled student's parents, teachers, other educational specialists, and

where appropriate, the student.  *See* 20 U.S.C. § 1414(d)(1)(C).

Here, as the Hearing Officer concluded, the December 19, 2006 MDR meeting did not discuss continuing services during Plaintiff's suspension or expulsion, and while tutoring was discussed during the resolution meeting, "there was no agreement among the team as to the services that would be provided." A.R. at 12 (4/5/07 HOD). Instead, MAPCS's Special Education Coordinator "unilaterally decided the amount of the tutoring after the resolution meeting." *Id.* In doing so, MAPCS violated its obligation as a local educational agency to ensure that Plaintiff's IEP Team determined the services he received while on suspension or after being expelled, and in particular, the interim alternative educational setting in which he was to receive those services. *Id.*

Finally, in arguing that the Hearing Officer erred in concluding that MAPCS was required to provide Plaintiff with continuing services, MAPCS states that it "provide[d] services in the form of individualized tutoring for 3 hours per week," but that "Plaintiff failed to avail himself of these services, and MAPCS cannot be held responsible for [] Plaintiff not availing himself of these services." Def.'s MSJ at 3. As noted above, a factual dispute exists between the parties as to "when the tutoring began, the quantity of tutoring delivered, the subjects covered in the tutoring and the student's availability for tutoring." A.R. at 6 n.5 (4/5/07 HOD). This dispute, however, is immaterial because as the Hearing Officer correctly concluded, "the decision to provide the student tutoring was not a decision made by the student's IEP team." *Id.* at 11. As such, tutoring–regardless of the amount actually provided–did not constitute a valid interim alternative educational placement under the IDEA and its implementing regulations. *See* 20 U.S.C. § 1415(k)(2); 34 C.F.R. § 300.530(d)(5). Accordingly, the Court concludes that Defendant has not shown error in the Hearing Officer's finding that MAPCS denied Plaintiff

FAPE by failing to ensure an interim alternative educational placement and thus to provide him

with continuing services following his suspension and expulsion.  Further, having concluded that

Defendant failed to establish any error in the April 5, 2007 HOD, the Court must deny

Defendant's Motion for Summary Judgment.

> B.    *Plaintiff's Motion for Summary Judgment Shall Be Granted-in-Part and Denied-in-Part*

Plaintiff's Motion for Summary Judgment argues in passing that the April 5, 2007 HOD

was correct as a matter of law and should not be reversed.  Pl.'s MSJ at 14-15.  Having reached

that conclusion above, the Court shall grant-in-part Plaintiff's Motion for Summary Judgment

insofar as it seeks to affirm the HOD.  The Court now turns to considering the arguments that

comprise the bulk of Plaintiff's Motion for Summary Judgment: (1) that MAPCS denied Plaintiff

FAPE when it violated the April 5, 2007 HOD, and (2) that MAPCS violated 42 U.S.C. § 1983

by failing to comply with the April 5, 2007 HOD.

> 1.    *MAPCS Violated the April 5, 2007 HOD, But Plaintiff Has Not Established That the Violation Constituted a Denial of FAPE*

The Court's discussion above establishes that–despite Defendant's suggestion to the

contrary–the Hearing Officer did not err in concluding that MAPCS denied Plaintiff FAPE.  As a

remedy for that finding, the April 5, 2007 HOD required MAPCS to

> within ten (10) school days . . . convene a multi-disciplinary team/individualized education program (MDT/IEP) meeting to develop a FBA and BIP for the student, discuss if any additional evaluations are warranted, review and/or revise the student's IEP as appropriate, discuss and determine the student's placement, and discuss compensatory education and develop a compensatory education plan for the time student had not been provided an alternative interim placement decided by the IEP team.

A.R. at 13 (4/5/07 HOD).  MAPCS was also required to "ensure that a representative of DCPS

participates in the MDT/IEP meeting," and the HOD provided that, with respect to Plaintiff's

placement, either MAPCS was to allow Plaintiff to reenroll at MAPCS or DCPS was to issue a

notice of placement. *Id.*

Following the issuance of the HOD, Plaintiff's educational advocate attempted to

schedule the MDT required by the HOD. Pl.'s MSJ, Ex. 1 (4/11/07 Letter from educational

advocate to MAPCS Special Education Coordinator). MAPCS, however, responded that it was

"appealing the HOD issued on April 5, 2007, and thus [would] not be convening the MDT

meeting outlined in the HOD." Pl.'s Stmt. ¶¶ 5-6; Pl.'s MSJ, Ex. 3 (4/13/07 Letter from MAPCS

counsel to Pl.'s counsel); *see also* Pl.'s MSJ, Ex. 2 (4/12/07 Letter from Pl.'s counsel to MAPCS

counsel). Eventually, Plaintiff filed his TRO/PI Motion, seeking to compel MAPCS to comply

with the April 5, 2007 HOD. *See* 6/12/07 Order, Docket No. [7]. In turn, that Motion was

resolved–and denied without prejudice by the Court–when the parties reached an agreement to

convene an MDT meeting with DCPS, in which MAPCS would participate, in order to update

Plaintiff's IEP to facilitate an interim placement which DCPS would effectuate pending a

resolution of Defendant's appeal of the HOD. *Id.* at 2-3.

As noted above, in resolving the TRO/PI Motion, the Court never reached the issue of

whether MAPCS failed to comply with the April 5, 2007 HOD; nevertheless, there is no question

that MAPCS refused to comply with the HOD before Plaintiff filed his TRO/PI Motion.

MAPCS does not attempt to justify–or even address–this refusal in its briefing regarding the

pending Motions for Summary Judgment. The Court notes, however, that to the extent MAPCS

apparently refused to comply on the basis that it was appealing the HOD, it did not proffer legal

authority indicating that a school is allowed to essentially grant itself a stay when it disagrees

with an HOD.  Nor is the Court aware of any such authority; to the contrary, as Judge Paul L.

Friedman recently noted in *Suggs*:

> There is, of course, a provision of the IDEA that allows the child to opt to 'stay
> put'- to remain in the then-current educational placement - during the pendency
> of further proceedings.  *See* 20 U.S.C. § 1415(j).  Nowhere in the IDEA, however, is
> there a corresponding right of an education provider to decline to implement a
> Hearing Officer Decision in a student's favor automatically, without seeking a
> stay of that Decision from either the Hearing Office or the Court in which further
> proceedings have been commenced under 20 U.S.C. § 1415(i)(2).

562 F. Supp. 2d at 143.  Accordingly, the Court easily concludes that MAPCS violated the April

5, 2007 HOD when it refused to convene the MDT/IEP meeting called for in that HOD because

it planned to appeal.

However, contrary to Plaintiff's assertion that a "[f]ailure[] to comply with [a] hearing

officer's determination result[s] in [a] per se denial of access to [FAPE]," Pl.'s MSJ at 11, the

Court's conclusion that MAPCS failed to comply with the April 5, 2007 HOD does not

automatically mean that Plaintiff was denied FAPE.  As the D.C. Circuit noted in *Lesesne*, "even

assuming that [MAPCS] violated its procedural obligations, an IDEA claim is viable only if

those procedural violations affected the student's *substantive* rights."  447 F.3d at 834 (emphasis

in original).  Thus, "[i]f a disabled child received (or was offered) a FAPE in spite of a technical

violation of the IDEA, the [educational agency] has fulfilled its statutory obligations."  *M.M. ex*

*rel. D.M. v. Sch. Dist.*, 303 F.3d 523, 533-34 (4th Cir. 2002) (cited with approval by the D.C.

Circuit in *Lesesne*).  Here, as the Court noted in denying Plaintiff's TRO/PI Motion, and as

Plaintiff concedes in his Motion for Summary Judgment, while MAPCS refused to implement

the HOD while it was on appeal, DCPS stepped in and agreed to conduct the FBA and IEP

required by the HOD.  *See* 6/12/07 Order, Docket No. [7]; Pl.'s MSJ at 11 (stating that during the

31

May 31, 2007 meeting "DCPS . . . agreed to complete [Plaintiff's expired psycho-educational]

evaluation and made plans to complete the functional behavioral assessment and behavioral

implementation plan."). Indeed, Plaintiff's Motion for Summary Judgment asserts that "DCPS

completed the FBA." Pl.'s MSJ at 11.

　　　　In addition to DCPS' agreement, MAPCS agreed to provide Plaintiff with five hours of

tutoring per week through August 3, 2007, and to allow Plaintiff until August 3, 2007 to turn in

assignments for credit from the 2006-2007 school year. *Id.* At this point, however, the record is

entirely unclear as to what services Plaintiff has actually received, and thus whether MAPCS's

refusal to implement the HOD ultimately resulted in a denial of FAPE. While DCPS has

apparently completed the FBA required by the April 5, 2007 HOD, *see* Pl.'s MSJ at 11, the

record is devoid of information as to whether a BIP has been conducted, whether Plaintiff ever

received an alternative educational placement from DCPS and enrolled in an another school,

whether any compensatory education plan was developed by the parties, and whether Plaintiff's

IEP was revised (if appropriate). Each of these issues is explicitly mentioned as a remedy in the

April 5, 2007 HOD, but based on the current record the Court cannot determine whether the

HOD has, at this point, been fully complied with (by DCPS, MAPCS, or a combination of the

two). As such, the Court cannot determine whether MAPCS's failure to implement the April 5,

2007 HOD–either before or after the filing of Plaintiff's TRO/PI Motion–constitutes a denial of

FAPE. As Judge John D. Bates noted recently, a "child is not denied a FAPE where . . . the

procedural violations do not deprive him of an educational benefit under the IDEA." *O.O. v.

Dist. of Columbia*, Civil A. No. 07-1863, 2008 WL 3929452, at *8 (D.D.C. Aug. 27, 2008)

(citing *Lesesne*, 477 F.3d at 834; *Roark ex rel. Roark v. Dist. of Columbia*, 460 F. Supp. 2d 32,

42 (D.D.C. 2006)).  *See also* 20 U.S.C. § 1415(f)(E)(ii) ("In matters alleging a procedural

violation, a hearing officer may find that a child did not receive [FAPE] only if the procedural

inadequacies--; (I) impeded the child's right to [FAPE]; (II) significantly impeded the parents'

opportunity to participate in the decisionmaking process regarding the provision of [FAPE] to the

parents' child; or (III) caused a deprivation of educational benefits.").  Simply put, the Court has

no means of determining–on the current factual record and briefing–whether Plaintiff has been

denied an educational benefit.

      Accordingly, while the Court agrees with Plaintiff that MAPCS violated the April 5, 2007

HOD by refusing to implement it while the HOD was on appeal, that conclusion is of little

consequence because the Court cannot determine whether MAPCS's violation resulted in a

denial of FAPE.  Further, there have been suggestions in this case–both in the April 5, 2007

HOD and in connection with Plaintiff's TRO/PI Motion–that Plaintiff is entitled to compensatory

education.  *See* A.R. at 13 (4/5/07 HOD) (stating that the MDT/IEP meeting should, *inter alia*,

"discuss compensatory education and discuss and develop a compensatory education plan for the

time" Plaintiff was not provided an interim alternative educational setting determined by his IEP

Team); Pl.'s TRO/PI Mot. at 10; 6/12/07 Order, Docket No. [7] at 4.  However, the current

record does not allow the Court to determine either whether any compensatory education has

been provided, or whether any compensatory education is appropriate at this point.  Significantly,

as the D.C. Circuit has found, "the inquiry must be fact-specific and, to accomplish IDEA's

purposes, the ultimate award must be reasonably calculated to provide the educational benefits

that likely would have accrued from special education services the school [] should have supplied

in the first place."  *Reid*, 401 F.3d at 524.  The current record simply does not afford the Court

the opportunity to conduct the type of "fact-specific" inquiry that is required in considering a request for compensatory education.

Based upon the foregoing, the Court shall grant-in-part Plaintiff's Motion for Summary Judgment insofar as it argues that MAPCS violated the April 5, 2007 HOD by refusing to implement it while the HOD was on appeal.  However, because the current record and briefing does not allow the Court to determine whether any denial of FAPE occurred, or whether any compensatory education is appropriate, the Court shall deny-in-part Plaintiff's Motion for Summary Judgment to the extent it argues as much.  As set forth in the Order accompanying this Memorandum Opinion, if Plaintiff believes that he was denied FAPE as a result of MAPCS's refusal to implement the April 5, 2007 HOD while it was on appeal, or believes that he is still entitled to compensatory education, he must set forth the factual and legal basis for his claims in a motion to be filed no later than October 10, 2008.  If Plaintiff files such a motion, Defendant will be provided an opportunity to respond to Plaintiff's brief.  If Plaintiff does not file such a motion, the Court will assume that entitlement to compensatory education is no longer at issue.

   2.   *Plaintiff Is Not Entitled to Summary Judgment on His Section 1983 Claim*

Finally, Plaintiff seeks summary judgment on his claim pursuant to 42 U.S.C. § 1983. Under that statute, any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.  Courts in this District have concluded that "IDEA violations can be the predicate for a § 1983 claim based on those statutory violations."

34

*Johnson v. District of Columbia*, 190 F. Supp. 2d 34, 46-47 (D.D.C. 2002); *R.S. v. District of Columbia*, 292 F. Supp. 2d 23, 28 (D.D.C. 2003).  In considering such claims, however, courts have largely applied a four-part test, requiring plaintiffs to show: (1) that the defendant violated IDEA; (2) that "exceptional circumstances" exist, such that the defendant's conduct that caused the IDEA violation was persistently egregious and prevented or frustrated the plaintiff from securing equitable relief under the IDEA; (3) "that the District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations"; and (4) that the normal remedies offered under the IDEA, including compensatory education, are inadequate to compensate the plaintiff for the harm he or she allegedly suffered.  *Walker v. District of Columbia*, 157 F. Supp. 2d. 11, 30 (D.D.C. 2001); *R.S.*, 292 F. Supp. 2d at 28.  Alternatively, some courts have only considered the first and third factors of the *Walker* test.  *See R.S.*, 292 F. Supp. 2d at 29 (citing *Johnson*, 190 F. Supp. 2d at 46-47, *Zearley v. Ackerman*, 116 F. Supp. 2d 109, 114 (D.D.C. 2000)).

Under either test, Plaintiff altogether fails to demonstrate that he is entitled to summary judgment on his Section 1983 claim.  Most egregious is Plaintiff's failure to establish "that the District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations," which is required under any interpretation of the *Walker* test.  *Walker*, 157 F. Supp. 2d at 30; *R.S.*, 292 F. Supp. 2d at 29.  With respect to that prong, Plaintiff's Motion for Summary Judgment states only that "the refusal to comply with hearing officer's determinations is not a new phenomenon in the District of Columbia Public School system."  Pl.'s MSJ at 14.  Plaintiff does not provide any factual support for this assertion, and it is patently insufficient to establish that there are no genuine issues of material fact as to whether MAPCS's alleged violations of the

IDEA were caused by a custom or practice of the District of Columbia.[5]  In fact, in the instant case, DCPS–rather than MAPCS–agreed to provide Plaintiff with services in the context of his TRO/PI Motion.  Accordingly, the Court must deny Plaintiff's Motion for Summary Judgment with respect to his Section 1983 claim.

Indeed, Plaintiff's abject failure to provide any evidence in support of his assertion that "the refusal to comply with hearing officer's determinations is not a new phenomenon in the District of Columbia Public School system" would ordinarily indicate that his Section 1983 claim should not proceed to trial.  Defendant, however, does not address Plaintiff's Section 1983 claim *at all* in its Motion for Summary Judgment, and has not moved for summary judgment in its favor on that claim.  As such, Plaintiff's Section 1983 claim remains in this lawsuit for the time being.  However, as set forth in the Order accompanying this Memorandum Opinion, Defendant shall file an appropriate motion regarding the viability of Plaintiff's Section 1983 claim, and must do so no later than October 10, 2008.  Plaintiff shall be provided the opportunity to respond to Defendant's Motion regarding Plaintiff's Section 1983 claim.

## V: CONCLUSION

For the foregoing reasons, the Court finds that this action is not moot, that Defendant has failed to establish any error in the April 5, 2007 HOD, and that Defendant failed to comply with the April 5, 2007 HOD.  The Court also finds, however, that Plaintiff has not established that MAPCS's failure to comply with the April 5, 2007 HOD resulted in a denial of FAPE, and that

---

[5] While Plaintiff references the "*Blackman/Jones* consent decree," which he asserts concluded that "noncompliance [with] an HOD constitutes a denial of FAPE," he does not provide a citation to that consent decree, or explain how its purported conclusion would suggest that a custom or practice of the District of Columbia was the moving force behind MAPCS's alleged violations of the IDEA.  Pl.'s MSJ at 14.

Plaintiff is not entitled to summary judgment on his claim pursuant to 42 U.S.C. § 1983.

Accordingly, the Court shall GRANT-IN-PART and DENY-IN-PART Plaintiff's [22] Motion

for Summary Judgment, and shall DENY Defendant's [23] Motion for Summary Judgment.  An

appropriate Order accompanies this Memorandum Opinion.


Date:   September 26, 2008

                                    /s/
                                    COLLEEN KOLLAR-KOTELLY
                                    United States District Judge